IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

COOK COUNTY, ILL., et al.,

Plaintiffs-Appellees,

v.

CHAD F. WOLF, ACTING SECRETARY,
  DEPARTMENT OF HOMELAND
  SECURITY, et al.,

Defendants-Appellants.

No. 20-___

---

## MOTION FOR STAY PENDING APPEAL
## AND REQUEST FOR IMMEDIATE ADMINISTRATIVE STAY

The federal government respectfully requests a stay pending appeal of the

district court's order and Rule 54(b) judgment vacating the Department of Homeland

Security's October 2019 public-charge rule, *see Inadmissibility on Public Charge Grounds*,

84 Fed. Reg. 41,292 (Aug. 14, 2019) (the Rule), on a nationwide basis, and also

requests an immediate administrative stay while the Court considers this motion.

With one exception, the district court's order rests entirely on this Court's decision

upholding the district court's earlier preliminary injunction in *Cook County v. Wolf*, 962

F.3d 208 (7th Cir. 2020), pet. for cert. filed, No. 20-450 (Oct. 7, 2020), and presents

no new issues with respect to the merits of plaintiffs' claims for relief.  But the

Supreme Court has stayed that preliminary injunction, along with materially similar

injunctions issued by a district court in New York. *See Wolf v. Cook County*, 140 S. Ct. 681 (2020); *Department of Homeland Security v. New York*, 140 S. Ct. 599 (2020). The district court's refusal to grant a stay pending appeal here thus effectively overrides the Supreme Court's decision to grant a stay allowing the Rule's enforcement during the pendency of this litigation, and threatens chaos in the administration of public-charge inadmissibility determinations. A stay, including an immediate administrative stay, is therefore warranted.

1. DHS's public-charge rule was set to take effect on October 15, 2019. On October 14, the district court entered a preliminary injunction barring DHS from enforcing the Rule in Illinois. *See Cook County*, 962 F.3d at 217. After this Court declined to stay the injunction pending the government's appeal, the Supreme Court, on February 21, 2020, granted a stay pending disposition of any petition for writ of certiorari following this Court's decision on the merits of the preliminary injunction. *See Wolf v. Cook County*, 140 S. Ct. 681 (2020). The Supreme Court likewise stayed two preliminary injunctions against the Rule that had been entered by a district court in New York. *See Department of Homeland Security v. New York*, 140 S. Ct. 599 (2020). DHS thus began enforcing the Rule nationwide on February 24, 2020.

On June 10, 2020, this Court entered a decision affirming the district court's preliminary injunction. *Cook County*, 962 F.3d at 234. The Court concluded that plaintiffs were likely to prevail in establishing that the Rule was contrary to the Immigration and Nationality Act and the Rehabilitation Act, and was arbitrary and

capricious. *Id.* at 222-33. This Court also concluded that the other injunction factors weighed in favor of preliminary relief. *Id.* at 233-34.

In light of the Supreme Court's stay, however, the DHS Rule remained in effect in Illinois, notwithstanding this Court's ruling. On October 7, 2020, the government filed a petition for a writ of certiorari. *Wolf v. Cook County*, No. 20-450 (S. Ct.). The Supreme Court's stay will remain in effect until the Supreme Court resolves the government's petition, and, if the petition is granted, until the Supreme Court enters its judgment. *See Wolf v. Cook County*, 140 S. Ct. 681 (2020).

On November 2, 2020, the district court granted plaintiffs' request for partial summary judgment and entered a Rule 54(b) judgment vacating the Rule on a nationwide basis. Attachment A (Op.). Relying entirely on this Court's decision affirming the preliminary injunction, the district court held that the Rule is "substantively and procedurally defective under the APA" and that plaintiffs were therefore entitled to summary judgment on their APA claims. Op. 3-4 (citing *Cook County*, 962 F.3d at 229, 233).

Unlike in its preliminary injunction order, the district court concluded that the Rule should be vacated on a nationwide basis, not just in Illinois. Op. 4-7. The court reasoned that the APA's "plain terms" required the court to set the Rule aside everywhere. *Id.* (citing 5 U.S.C. § 706(2)(A) (stating that a reviewing court "shall . . . hold unlawful and set aside agency action" that violates the APA)).

3

The district court also declined the government's request for a stay pending appeal.  Op. 12-13.  The court concluded that, because this Court had affirmed its preliminary injunction notwithstanding the Supreme Court's stay of that injunction, this Court necessarily rejected the Supreme Court's conclusions that the government was likely to succeed in this litigation and that the balance of harms and the public interest favored allowing the Rule to be enforced during the pendency of this litigation.  Op. 13-14.[1]

**2.**  A stay pending appeal is warranted here.  As the district court acknowledged, its refusal to grant a stay pending appeal is in direct conflict with the Supreme Court's decision to grant a stay of the court's preliminary injunction barring enforcement of the Rule.  As the Fourth Circuit emphasized in parallel litigation challenging the Rule, the Supreme Court's decision to grant a stay "would have been improbable if not impossible had the government, as the stay applicant, not made 'a strong showing that it was likely to succeed on the merits.'"  *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 229 (4th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  Similarly, the Supreme Court necessarily concluded that the government will be irreparably harmed if the Rule is not implemented and that the balance of equities favor the Rule's enforcement.  *See Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009)

---

[1] The district court entered a Rule 54(b) judgment with respect to plaintiffs' APA claims after concluding that plaintiffs' equal protection challenge to the Rule was a distinct claim for relief that the court had yet to resolve.  Op. 8-12.

4

(Ginsburg, J., in chambers).  Indeed, this Court recognized that "the stay provides an indication that the [Supreme] Court thinks that there is at least a fair prospect that DHS should prevail and faces a greater threat of irreparable harm than the plaintiffs." *Cook County*, 962 F.3d at 234.

The district court's refusal to grant a stay pending appeal cannot be squared with those conclusions.  The legal theories underlying plaintiffs' APA claims, the harms plaintiffs allege, and the government's and public's interests in the Rule's enforcement are all identical to those presented to the Supreme Court.  The district court's failure to grant a stay thus plainly subverts the Supreme Court's analysis of the stay factors as applied to the Rule.

The district court erred in citing this Court's decision in *Cook County* as a reason for denying a stay pending appeal.  The language the district court quoted from this Court's opinion explained that the Supreme Court's decision did not control this Court's disposition of the merits of the preliminary-injunction appeal.  *See* Op. 13 (quoting 962 F.3d at 233-34).  But the Supreme Court explicitly extended its stay beyond this Court's resolution of the merits of that appeal, reflecting a judgment that the Rule should remain in effect even if this Court affirmed the district court's preliminary injunction.[2]  The district court nonetheless concluded that DHS should be

---

[2] For the reasons set forth in the government's extensive briefing, both in this Court and in the Supreme Court (which the government incorporates by reference and need not repeat here, since this Court is familiar with the issues), the government respectfully disagrees with this Court's decision on the merits.

prohibited from implementing the Rule before the Supreme Court has a chance to review the merits—all based on the same decision from this Court that did not and could not overrule the Supreme Court's decision to grant a stay. This Court should reject that approach, which violates the fundamental "hierarchical structure of the judiciary" that the district court claimed to be honoring. Op. 12.

The district court's refusal to grant a stay is all the more problematic in these circumstances because its actions disrupted the status quo. *See Cook County*, 962 F.3d at 234 (noting that the Supreme Court's stay "preserve[d] the status quo while this case and others percolate up from courts around the country"). At the time of the court's order, the Rule was in effect, as it had been for most of the previous eight months.[3] Setting the Rule aside now, before the Supreme Court has weighed in, threatens to sow confusion about the current and future effects of the Rule and deprives aliens and the government of clarity regarding which scheme should apply. Those harms provide reason alone to grant a stay, and also counsel in favor of an immediate administrative stay while this Court considers this motion, to avoid such confusion and chaos.

---

[3] Enforcement of the Rule was temporarily halted when the district court in New York entered a second preliminary injunction barring enforcement of the Rule nationwide on July 29, 2020, citing the ongoing pandemic as a justification. On August 12, 2020, the Second Circuit stayed that injunction insofar as it applied outside the Second Circuit; on September 11, 2020, the Second Circuit stayed the injunction in its entirety, on the ground that the district court likely lacked jurisdiction to enter a redundant nationwide injunction while its initial injunction was on appeal. *See New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 212 (2d Cir. 2020).

**3.**  At a minimum, this Court should stay the district court's injunction insofar as it applies to parties outside Illinois.  As a growing number of courts have recognized, nationwide relief is as a general matter inconsistent with "traditional notions of the judicial role," likely "exceed[s] the constitutional and statutory limits on the federal equity power," and improperly "elevate[s] the individual over the collective in a fashion that shuts off other voices to the detriment of sound resolutions and decisionmaking." *CASA de Maryland*, 971 F.3d at 255-56; *see also, e.g.*, *New York v. U.S. Dep't of Homeland Security*, 969 F.3d 42, 87-88 (2d Cir. 2020) (limiting nationwide injunction against the Rule to the States within the Second Circuit); *Department of Homeland Security v. New York*, 140 S. Ct. 599 (2020) (Gorsuch, J., concurring); *Trump v. Hawaii*, 138 S. Ct. 2392, 2424 (2018) (Thomas, J., concurring); *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018).

The district court wrongly concluded that § 706 of the APA required it to set the Rule aside in its entirety, because that provision provides that a reviewing court "shall . . . set aside" agency action that violates the APA.  "Nothing in the language of the APA, however, requires [courts] to exercise such far-reaching power." *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 394 (4th Cir. 2001).  Indeed, just a few years before Congress enacted the APA, the Supreme Court held that a provision stating that a court "'shall'" enjoin violations was insufficient to displace a court's remedial discretion under "the requirements of equity practice." *The Hecht Co. v. Bowles*, 321 U.S. 321, 327, 329 (1944).  So too here, the APA's provision that a court

"shall" set aside unlawful agency action does not displace traditional restrictions on a court's equitable powers. To the contrary, the APA expressly provides that the Act preserves "other limitations on judicial review" as well as "the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground," 5 U.S.C. § 702; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) (stating that the APA incorporates "equitable defenses"). And the district court and this Court plainly have authority, even independent of the APA, to stay the effect of an adverse judgment in part to reflect the balance of harms between the parties before the Court.

In short, section 706 does not displace traditional limits on a court's authority to grant equitable relief, including the requirement that injunctive relief "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Because an injunction setting the Rule aside on a nationwide basis is unnecessary to provide complete relief to the plaintiffs in this case and would substantially burden the government, this Court should stay at least that aspect of the district court's judgment.

\* \* \*

8

For the foregoing reasons, the district court's order and Rule 54(b) judgment should be stayed pending the government's appeal. At a minimum, the judgment should be limited to the State of Illinois. Furthermore, this Court should enter an immediate administrative stay while it considers this motion.

Respectfully submitted,

JEFFRERY BOSSERT CLARK
  *Acting Assistant Attorney General*

JOHN R. LAUSCH, JR.
  *United States Attorney*

*s/ Gerard Sinzdak*

DANIEL TENNY
GERARD SINZDAK
JOSHUA DOS SANTOS
JACK STARCHER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7242*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-0718*
  *gerard.j.sinzdak@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,858 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

s/ *Gerard Sinzdak*
Gerard Sinzdak

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2020, I filed the foregoing with the Clerk of the Court by email to the following address: USCA7_Clerk@ca7.uscourts.gov.  I served the foregoing on counsel for plaintiffs-appellees via email to the following addresses: Svatek, Marlow <msvatek@sidley.com>;

Lauren Miller <Lauren.Miller@cookcountyil.gov>;

Carrie Chapman <cchapman@legalcouncil.org>;

Meghan Carter <mcarter@legalcouncil.org>;

Militza Pagan <militzapagan@povertylaw.org>;

Nolan Downey <nolandowney@povertylaw.org>;

Rodheim, Andy F. <arodheim@sidley.com>;

Flint, Tacy F. <tflint@sidley.com>;

Gordon, David A. <dgordon@sidley.com>;

Kate Walz <kwalz@nhlp.org>


                                        s/ *Gerard Sinzdak*
                                        Gerard Sinzdak

**ATTACHMENT A**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COOK COUNTY, ILLINOIS, an Illinois governmental entity, and ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS, INC., | ) ) ) | 19 C 6334 |
| | ) | |
| Plaintiffs, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) | |
| | ) | |
| CHAD F. WOLF, in his official capacity as Acting Secretary of U.S. Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY, a federal agency, KENNETH T. CUCCINELLI II, in his official capacity as Acting Director of U.S. Citizenship and Immigration Services, and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, a federal agency, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Cook County and Illinois Coalition for Immigrant and Refugee Rights, Inc. ("ICIRR") allege in this suit that the Department of Homeland Security's ("DHS") final rule, *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("Final Rule" or "Rule"), is unlawful. Doc. 1. Plaintiffs claim that the Rule violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., because (1) it exceeds DHS's authority under the public charge provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(4)(A); (2) is not in accordance with law; and (3) is arbitrary and capricious. Doc. 1 at ¶¶ 140-169. ICIRR also claims that the Rule violates the equal protection component of the Fifth Amendment's Due Process Clause. *Id*. at ¶¶ 170-188.

On October 14, 2019, this court preliminarily enjoined DHS from enforcing the Final Rule in the State of Illinois, reasoning that the Rule likely violates the APA because it interprets

the term "public charge" in a manner incompatible with its statutory meaning.  Docs. 85, 87, 106

(reported at 417 F. Supp. 3d 1008 (N.D. Ill. 2019)).  DHS appealed.  The Seventh Circuit denied

DHS's motion to stay the preliminary injunction pending appeal, No. 19-3169 (7th Cir. Dec. 23,

2019), but the Supreme Court issued a stay, 140 S. Ct. 681 (2020) (mem.).  Meanwhile, DHS

moved to dismiss the suit under Civil Rules 12(b)(1) and 12(b)(6).  Doc. 124.  This court denied

DHS's motion and granted ICIRR's request for extra-record discovery on its equal protection

claim.  Docs. 149-150 (reported at 461 F. Supp. 3d 779 (N.D. Ill. 2020)).  And this court denied

DHS's motion to certify under 28 U.S.C. § 1292(b) an interlocutory appeal of the denial of its

motion to dismiss the equal protection claim.  Docs. 183-184 (reported at 2020 WL 3975466

(N.D. Ill. July 14, 2020)).

Shortly after this court denied DHS's motion to dismiss, the Seventh Circuit affirmed the

preliminary injunction, reasoning that the Final Rule likely violates the APA.  962 F.3d 208 (7th

Cir. 2020).  Armed with the Seventh Circuit's decision, Plaintiffs move for summary judgment

on their APA claims.  Doc. 200.  They seek a partial judgment under Civil Rule 54(b)—one that

would vacate the Rule pursuant to the APA and allow continued litigation on ICIRR's equal

protection claim.  Docs. 217-218.  Plaintiffs' motion is granted.  A Rule 54(b) judgment is

entered, the Final Rule is vacated, DHS's request to stay the judgment is denied, and ICIRR's

equal protection claim may proceed in this court.

## Discussion

The pertinent background is set forth in this court's opinions and the Seventh Circuit's

opinion, familiarity with which is assumed.

## I.     Plaintiffs' Summary Judgment Motion

DHS forthrightly concedes that the Seventh Circuit's opinion affirming the preliminary

injunction effectively resolves the APA claims on the merits in Plaintiffs' favor.  Doc. 209 at 7

("Defendants do not dispute that the Seventh Circuit's legal conclusions concerning the Rule

may justify summary judgment for Plaintiffs on their APA claims here."); Doc. 219 at 1

("Plaintiffs have argued, and Defendants do not dispute, that the Court may grant Plaintiffs'

pending [summary judgment motion] in light of the Seventh Circuit's decision affirming the

Court's preliminary injunction order.").  That concession is appropriate given the Seventh

Circuit's conclusion that the Final Rule is both substantively and procedurally defective under

the APA.  962 F.3d at 222-33.

As for substance, the Seventh Circuit held in pertinent part as follows:

> … Even assuming that the term "public charge" is ambiguous and thus might
> encompass more than institutionalization or primary, long-term dependence
> on cash benefits, it does violence to the English language and the statutory
> context to say that it covers a person who receives only *de minimis* benefits
> for a *de minimis* period of time.  There is a floor inherent in the words "public
> charge," backed up by the weight of history.  The term requires a degree of
> dependence that goes beyond temporary receipt of supplemental in-kind
> benefits from any type of public agency.
>
> *      *      *
>
> The ambiguity in the public-charge provision does not provide DHS
> unfettered discretion to redefine "public charge."  We find that the
> interpretation reflected in the Rule falls outside the boundaries set by the
> statute.

*Id*. at 229.[*]  As for procedure, and in the alternative, the Seventh Circuit held that the Rule was

"likely to fail the 'arbitrary and capricious' standard" due to "numerous unexplained serious

---

[*] Although the Seventh Circuit reached its conclusion under step two of *Chevron* and this court
stopped at step one, there is less dissonance between the two opinions than meets the eye.
Adopting the methodological approach urged by DHS—which it has since abandoned—that
"'the late 19th century [is] the key time to consider' for determining the meaning of the term
'public charge,'" 417 F. Supp. 3d at 1023 (quoting DHS's brief in opposition to Plaintiffs'
motion for preliminary injunction), this court concluded from an examination of
contemporaneous court decisions, dictionaries, and commentary that "an alien [cannot] be
deemed a public charge based on the receipt, or anticipated receipt, of a modest quantum of
public benefits for short periods of time," *id*. at 1026.  *See id*. at 1022-29 (analyzing the cases,
dictionaries, and commentary).  And as just noted, the Seventh Circuit held that "[t]here is a

flaws: DHS did not adequately consider the reliance interests of state and local governments; did

not acknowledge or address the significant, predictable collateral consequences of the Rule;

incorporated into the term 'public charge' an understanding of self-sufficiency that has no basis

in the statute it supposedly interprets; and failed to address critical issues such as the relevance of

the five-year waiting period for immigrant eligibility for most federal benefits." *Id*. at 233.

Given these holdings, DHS is right to acknowledge that this court should grant summary

judgment to Plaintiffs on their APA claims.

The parties disagree, however, about the appropriate remedy. Plaintiffs ask this court to

vacate the Final Rule. Doc. 201 at 35-37. DHS contends that this court should vacate the Rule

only insofar as it affects Plaintiffs, meaning that the vacatur should be limited to the State of

Illinois. Doc. 209 at 27-29. Plaintiffs are correct.

The APA provides in pertinent part that "[t]he reviewing court shall … hold unlawful and

set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A]gency

action" includes "the whole or a part of an agency rule." *Id*. § 551(13). By the APA's plain

terms, then, an agency rule found unlawful in whole is not "set aside" just for certain plaintiffs or

geographic areas; rather, the rule "shall" be "set aside," period. *See Murphy v. Smith*, 138 S. Ct.

---

floor inherent in the words 'public charge,'" and that "[t]he term requires a degree of dependence
that goes beyond temporary receipt of supplemental in-kind benefits from any type of public
agency." 962 F.3d at 229. Both opinions rest on a common premise: whatever play in the joints
the statutory term "public charge" might enjoy, it cannot be stretched to cover the full measure of
noncitizens deemed by the Final Rule to be public charges. *See generally* Matthew C.
Stephenson & Adrian Vermeule, Chevron *Has Only One Step*, 95 Va. L. Rev. 597, 599 (2009)
("[*Chevron*] artificially divides one inquiry into two steps. The single question is whether the
agency's construction is permissible as a matter of statutory interpretation; the two *Chevron*
steps both ask this question, just in different ways. As a result, the two steps are mutually
convertible."); *id*. at 602 ("Congress' intention may be ambiguous within a range, but not at all
ambiguous as to interpretations outside that range, which are clearly forbidden.").

784, 787 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty, so the verb phrase

'shall be applied' tells us that the district court has some nondiscretionary duty to perform.")

(quoting 42 U.S.C. § 1997e(d)(2)); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523

U.S. 26, 35 (1998) ("[T]he mandatory 'shall'… normally creates an obligation impervious to

judicial discretion.") (quoting 28 U.S.C. § 1407(a)).

 Precedent confirms that the APA's text means what it says.  For example, in *Bowen v.

Georgetown University Hospital*, 488 U.S. 204 (1988), the Supreme Court affirmed the D.C.

Circuit's decision to set aside an agency rule concerning Medicaid reimbursement costs.  Rather

than limit relief to the "group of seven hospitals" that had filed suit, the Court declared the Rule

"invalid."  *Id.* at 207, 216.  There is nothing unusual about this result, for that is simply what

courts do when they determine that an agency action violates the APA.  *See, e.g.*, *DHS v.

Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020) (holding that DHS's rescission of the

Deferred Action for Childhood Arrivals program "must be vacated" due to the agency's violation

of the APA); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("Courts

enforce [arbitrary and capricious review] with regularity when they set aside agency regulations

which … are not supported by the reasons that the agencies adduce."); *H & H Tire Co. v. U.S.

Dep't of Transp.*, 471 F.2d 350, 355-56 (7th Cir. 1972) ("When an administrative decision is

made without consideration of relevant factors it must be set aside.") (internal quotation marks

omitted); *Empire Health Found. ex rel. Valley Hosp. Med. Ctr. v. Azar*, 958 F.3d 873, 886 (9th

Cir. 2020) ("[W]hen a reviewing court determines that agency regulations are unlawful, the

ordinary result is that the rules are vacated—not that their application to the individual

petitioners is proscribed.") (internal quotation marks omitted); *Nat'l Mining Ass'n v. U.S. Army

Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (same).

DHS cites *Johnson v. United States Office of Personnel Management*, 783 F.3d 655 (7th Cir. 2015), for the proposition that the APA authorizes courts to limit the vacatur of agency action to a defined geographic area. Doc. 209 at 27. True enough, *Johnson* held that "partial vacatur is sometimes an appropriate remedy" for an APA violation. 783 F.3d at 663. But by "partial vacatur," the Seventh Circuit meant a circumstance where a court invalidates the unlawful parts of an agency action and leaves the valid parts in place. *See ibid.* (citing *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77 (D.D.C. 2010), where the district court invalidated only part of a Clean Water Act permit). The Seventh Circuit did not mean that an agency rule can be vacated only as to certain plaintiffs or certain States. Nor could the court possibly have meant that. As Judge Moss has aptly observed: "As a practical matter, … how could [a] [c]ourt vacate [a challenged] Rule with respect to the … plaintiffs in [a] case without vacating the Rule writ large? What would it mean to 'vacate' a rule as to some but not other members of the public? What would appear in the Code of Federal Regulations?" *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).

DHS retorts that an order vacating the Final Rule without any geographic limitation would be akin to entering the kind of nationwide injunction that the Fourth Circuit and two Justices have criticized in other cases involving APA challenges to the Rule. Doc. 209 at 27-30; *see DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch, J., joined by Thomas, J., concurring in the grant of stay); *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 255-63 (4th Cir. 2020). DHS's analogy is inapt. As an initial matter, the two cases cited by DHS arose in the preliminary injunction posture—the district courts there could not have vacated the Rule at that early juncture, so the only question concerned the appropriate scope of preliminary relief. Here, by contrast, Plaintiffs ask this court to vacate the Rule after a judgment on the merits. Although

vacatur will prevent DHS from enforcing the Rule against nonparties, that is a consequence not of the court's *choice* to grant relief that is broader than necessary, but of the APA's *mandate* that flawed agency action must be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2).

Moreover, DHS's analogy fails to recognize that the two remedies—vacatur of a rule, and a nationwide injunction against its implementation—have significant differences. A nationwide injunction is a "drastic and extraordinary remedy" residing at the outer bounds of the judicial power. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course. If a less drastic remedy (such as partial or complete vacatur of [the agency's] deregulation decision) was sufficient to redress [the challengers'] injury, no recourse to the additional and extraordinary relief of an injunction was warranted."). Vacatur, by contrast, is the ordinary remedy—again, precisely the remedy demanded by the APA's text when a rule is held to violate the APA. *See* 5 U.S.C. § 706(2) (providing that the court "shall" "set aside" the challenged "agency action" if it is adopted "in excess of statutory … authority" or is "arbitrary [and] capricious"); *see also Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017) ("A common remedy when we find a rule invalid is to vacate."). As Judge Randolph has explained:

> Once a reviewing court determines that the agency has not adequately explained its decision, the [APA] requires the court—in the absence of any contrary statute—to vacate the agency's action. The [APA] states this in the clearest possible terms. Section 706(2)(A) provides that a "reviewing court" faced with an arbitrary and capricious agency decision "shall"—**not may**— "hold unlawful and set aside" the agency action. Setting aside means vacating; no other meaning is apparent. Often we do this simply as a matter of course.

*Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (opinion of Randolph, J.) (citation omitted).

In sum, the Final Rule is vacated, and the vacatur is not limited to the State of Illinois.

## II.     Rule 54(b) Judgment

With the APA claims resolved in Plaintiffs' favor, the question becomes whether the court should enter judgment under Rule 54(b) or, rather, under Rule 58—and, relatedly, what should happen to ICIRR's equal protection claim.  Plaintiffs urge this court to enter a Rule 54(b) judgment on their APA claims and allow ICIRR to continue litigating its equal protection claim. Docs. 217-218.  DHS does not expressly address whether a Rule 54(b) or Rule 58 judgment should be entered, but argues in its brief—and reiterated last week at oral argument, Doc. 220— that the court should stay further proceedings on the equal protection claim if judgment is entered on the APA claims.  Doc. 219 at 1, 4-5.  The court will enter a Rule 54(b) judgment and, given the particular facts and circumstances of this suit and parallel suits pending elsewhere, will not stay litigation on the equal protection claim.

"When a case involves more than one claim, Rule 54(b) allows a federal court to direct entry of a final judgment on 'one or more, but fewer than all, claims,' provided there is no just reason for delay." *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019) (quoting Fed. R. Civ. P. 54(b)).  "A proper Rule 54(b) order requires the district court to make two determinations: (1) that the order in question was truly a 'final judgment,' and (2) that there is no just reason to delay the appeal of the claim that was 'finally' decided." *Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 434-37 (1956)).  Plaintiffs satisfy both requirements.

As to the "final judgment" requirement, "a judgment must be final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Ibid.* (internal quotation marks omitted).  A judgment is not "truly final" if "there is too much factual overlap with claims remaining in the district court." *Peerless Network*, 917 F.3d at 543.

When "multiple claims arise from the same set of facts," the court must "consider whether they are based on entirely different legal entitlements yielding separate recoveries or different legal theories aimed at the same recovery—the latter of which makes Rule 54(b) partial final judgment improper." *Ibid.* (internal quotation marks omitted).

The final judgment requirement is satisfied here.  The APA claims concern whether the Final Rule properly implements the INA's public charge provision and whether DHS's rulemaking was arbitrary and capricious, Doc. 1 at ¶¶ 140-169; 962 F.3d at 222-33, while the equal protection claim concerns whether the Rule is motivated by the impermissible discriminatory purpose of favoring white immigrants over nonwhite immigrants, Doc. 1 at ¶¶ 170-188; 461 F. Supp. 3d at 784-92.  Other than their common attack on the Rule itself, there is minimal factual (or legal) overlap between those claims.  *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 465 (7th Cir. 2008) (holding that tort and property law claims arising from the collapse of a water canal had "some overlapping historical facts" but nonetheless were "sufficiently distinct" for purposes of Rule 54(b)); *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 515-16 (7th Cir. 2002) (upholding the entry of a Rule 54(b) judgment on a copyright claim because "the only facts before [the court] on … appeal" were "unlikely to be at issue" in the trademark claim that remained in the district court).  Granted, a portion of one of Plaintiffs' APA claims alleges that the economic justifications articulated by DHS for the Rule are a pretext for racial discrimination, Doc. 1 at ¶ 166; 2020 WL 3975466, at *2, but the Seventh Circuit's opinion did not rely on pretext, and this court's grant of summary judgment on the APA claims likewise does not rely on pretext given that it rests exclusively on the Seventh Circuit's opinion.  *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1163 (7th Cir. 1997) ("[S]ome overlap between the facts in the retained and the appealed claims is not fatal.").

Moreover, the APA and equal protection claims are not "different legal theories aimed at the same recovery." *Peerless Network*, 917 F.3d at 543 (internal quotation marks omitted).  The only remedy Plaintiffs seek under the APA is vacatur of the Final Rule.  Doc. 201 at 35-37; Doc. 213 at 2-6; Doc. 217 at 3; Doc. 218 at 1.  For its equal protection claim, ICIRR seeks a declaration that the Rule violates the Fifth Amendment and, more importantly, a permanent injunction enjoining DHS and its officials from implementing and enforcing the Rule, Doc. 1 at pp. 58-59, which could entail a requirement that, until a new rule is promulgated, DHS resume applying its 1999 field guidance, *Field Guidance on Deportability and Inadmissibility on Public Charge Grounds*, 64 Fed. Reg. 28,689 (May 26, 1999).  As noted, the Supreme Court in *Monsanto Co.* made clear that "complete vacatur of [an agency's] … decision" is a "less drastic remedy" than the "additional and extraordinary relief of an injunction."  561 U.S. at 165-66.  It follows that victory for ICIRR on its equal protection claim may yield relief in addition to the relief the court is granting on Plaintiff's APA claims.  *See Nat'l Ski Areas Ass'n v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1288 (D. Colo. 2012) (in addition to vacating a Forest Service administrative directive, granting injunctive relief against the agency's enforcement thereof "to ensure good faith between the parties while the [directive] runs through APA procedural process on remand").  Whether ICIRR will prevail on its equal protection claim, whether injunctive relief would be appropriate to remedy an equal protection violation, and what that relief might entail remain to be seen and cannot be answered at this juncture, when the parties have only recently commenced discovery and have not sought judgment on that claim.  *See Marie v. Mosier*, 196 F. Supp. 3d 1202, 1216 (D. Kan. 2016) (collecting cases in which district courts in the wake of *Obergefell v. Hodges*, 576 U.S. 644 (2015), enjoined state laws banning same sex marriage, and

10

rejecting the argument that the unlikelihood that those laws might be enforced made a permanent injunction unnecessary).

As to the "no just reason to delay the appeal" requirement, "a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Regarding the judicial system's interests, the "goal … is to prevent 'piece-meal appeals' involving the same facts." *Peerless Network*, 917 F.3d at 543 (quoting *Curtiss-Wright Corp.*, 446 U.S. at 10). Entry of a Rule 54(b) judgment is fully consistent with that aim because, as noted, the APA claims on which the court grants summary judgment have little overlap with ICIRR's equal protection claim. And regarding the equities, the Seventh Circuit has held that continued operation of the Final Rule will inflict ongoing harms on Cook County and on immigrants, 962 F.3d at 233, and this court has held that the same is true of ICIRR, 417 F. Supp. 3d at 1029-30. Because a Rule 54(b) judgment would give immediate effect to this court's vacatur of the Rule—which DHS resumed implementing in September, *see Public Charge Fact Sheet*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/news/public-charge-fact-sheet (last updated Sept. 22, 2020)—there is no just reason for delaying the entry of judgment or DHS's appeal thereof.

In sum, the entry of a Rule 54(b) final judgment on the APA claims is proper. The question remains whether this court should allow litigation to proceed on ICIRR's equal protection claim. In urging a stay of litigation on that claim, DHS invokes the constitutional avoidance doctrine, arguing that "courts 'will not decide a constitutional question if there is some other ground upon which to dispose of the case,' especially if the other ground 'afford[s] [a plaintiff] all the relief it seeks.'" Doc. 219 at 3 (quoting *Nw. Austin Mun. Util. Dist. No. 1 v. Holder*, 557 U.S. 193, 205 (2009)) (alterations by DHS). DHS's argument fails because, as

noted, ICIRR's equal protection claim provides a basis for injunctive relief, which Plaintiffs do not seek—and would have faced an uphill battle obtaining—on their APA claims. *See Monsanto Co.*, 561 U.S. at 165-66; *O.A.*, 404 F. Supp. 3d at 153-54.

DHS argues in the alternative that this court should stay litigation on ICIRR's equal protection claim because discovery on that claim "could consume significant resources of both the Court and the parties." Doc. 219 at 5. If this case were the only challenge to the Final Rule pending in federal court, DHS's argument would have significant weight. But as DHS confirmed at argument, Doc. 220, discovery is proceeding on equal protection claims brought in two parallel public charge cases. *See Washington v. U.S. DHS*, No. 19 C 5210 (E.D. Wash.); *New York v. U.S. DHS*, No. 19 C 7777 (S.D.N.Y.). Proceeding with discovery on ICIRR's equal protection claim here therefore is unlikely to impose on DHS much work in addition to the work it is already doing in those other cases.

## III.     Stay of Judgment Pending Appeal

While acknowledging that, given the Seventh Circuit's ruling, summary judgment should be granted to Plaintiffs on the APA claims, DHS asks this court to stay its judgment pending appeal. Doc. 209 at 29-30. "The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction. … To determine whether to grant a stay, [the court] consider[s] the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014); *see also Venckiene v. United States*, 929 F.3d 843, 853 (7th Cir. 2019) (same).

The hierarchical structure of the judiciary makes this a straightforward decision for a district court. The Seventh Circuit held in the cases just cited that the standard for granting a stay pending appeal mirrors that for granting a preliminary injunction, and held in this case that

the criteria for a preliminary injunction have been met.  962 F.3d at 221-34.  Accordingly,

because (as the Seventh Circuit held) Plaintiffs are entitled to a preliminary injunction, DHS is

not entitled to a stay pending appeal.

DHS counters with the argument that the Supreme Court, in staying this court's

preliminary injunction order, "'necessarily conclud[ed]' that Plaintiffs were unlikely to succeed

on the merits" and "necessarily … determin[ed] that the balance of the harms and the public

interest support a stay."  Doc. 209 at 29 (quoting *CASA de Md.*, 971 F.3d at 230) (first alteration

in original).  But the Seventh Circuit effectively rejected that line of reasoning in affirming the

preliminary injunction:

> With respect to the balance of harms, we must take account of the Supreme Court's decision to stay the preliminary injunction entered by the district court.  The Court's stay decision was not a merits ruling. … We do not know why the Court granted this stay, because it did so by summary order, but we assume that it abided by the normal standards.  Consequently, the stay provides an indication that the Court thinks that there is at least a fair prospect that DHS should prevail and faces a greater threat of irreparable harm than the plaintiffs.
>
> The stay thus preserves the status quo while this case and others percolate up from courts around the country.  There would be no point in the merits stage if an issuance of a stay must be understood as a *sub silentio* disposition of the underlying dispute.  With the benefit of more time for consideration and the complete preliminary injunction record, we believe that it is our duty to evaluate each of the preliminary injunction factors, including the balance of equities.  In so doing, we apply a 'sliding scale' approach in which "the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d [959,] 966 [(7th Cir. 2018)].  We also consider effects that granting or denying the preliminary injunction would have on the public.  *Ibid*.
>
> In our view, Cook County has shown that it is likely to suffer (and has already begun to suffer) irreparable harm caused by the Rule.  Given the dramatic shift in policy the Rule reflects and the potentially dire public health consequences of the Rule, we agree with the district court that the public interest is better served for the time being by preliminarily enjoining the Rule.

962 F.3d at 233-34.  In reaching that decision, the Seventh Circuit also had the benefit of a Ninth

Circuit opinion holding that the Final Rule likely complied with the APA, *see City and Cnty. of*

*San Francisco v. USCIS*, 944 F.3d 773 (9th Cir. 2019), and necessarily rejected the Ninth

Circuit's approach.  Given the Seventh Circuit's holding that, despite the Supreme Court's stay,

the Final Rule was substantively and procedurally invalid under the APA and preliminary

injunctive relief was appropriate, this court will not stay its vacatur of the Rule.

### Conclusion

Plaintiffs' summary judgment motion is granted.  The court enters a Rule 54(b) judgment

vacating the Final Rule, to take effect immediately.  Litigation may proceed in this court on

ICIRR's equal protection claim.

November 2, 2020

_____
United States District Judge

**ATTACHMENT B**

ILND 450 (Rev. 10/13) Judgment in a Civil Action
Case: 1:19-cv-06334 Document #: 223 Filed: 11/02/20 Page 1 of 1 PageID #:3032
Case: 20-3150        Document: 2        Filed: 11/03/2020        Pages: 28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Cook County, Illinois et al ,

Plaintiff(s),

v.

Wolf et al,

Defendant(s).

Case No.  19 C 6334
Judge Gary Feinerman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes        pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

☒    other: Judgment is entered in favor of Plaintiffs Cook County, Illinois, and Illinois Coalition for Immigrant and Refugee Rights, Inc., and against Defendants Chad F. Wolf, et al., on Plaintiff's claims under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.  The Department of Homeland Security's final rule, Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("Final Rule"), is vacated, effective immediately.  There is no just reason for delay of the entry or appeal of this judgment.

This action was *(check one)*:

☐ tried by a jury with Judge       presiding, and the jury has rendered a verdict.
☐ tried by Judge       without a jury and the above decision was reached.
☒ decided by Judge Gary Feinerman on a motion.

Date:   11/2/2020

Thomas G. Bruton, Clerk of Court

/s/ Jackie Deanes , Deputy Clerk