No. 20-3150

# In the United States Court of Appeals for the Seventh Circuit

COOK COUNTY, ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS,
*Plaintiffs-Appellees*,

*v.*

CHAD F. WOLFE, *ET AL.*
*Defendants-Appellants.*

On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division

## OPPOSED MOTION TO INTERVENE AS DEFENDANT-APPELLANTS

The States of Texas, Alabama, Arizona, Arkansas, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, Ohio, Oklahoma, South Carolina, and West Virginia move under Federal Rule of Appellate Procedure 27 to intervene as a Defendant-Appellants to challenge the district court's order, which applies nationwide, vacating a rule interpreting the Immigration and Nationality Act's prohibition against immigration by those who would become a public charge ("Rule"). Two days ago, Defendants, who are agents or agencies of the United States (collectively, the "United States"), filed a stipulated motion to dismiss this appeal. The Court granted that stipulated motion and immediately issued its mandate without offering affected parties an opportunity to seek to defend the Rule. Because the Rule at issue

directly implicates the States' obligations in providing Medicaid and other services, they seek leave to defend the suit.

The States timely seek to intervene. Until two days ago, the United States defended the Rule, so that the States' intervention prior to that point would have unnecessarily complicated this suit. But now that the federal government has abandoned that defense—and, by extension, has evaded the Administrative Procedure Act's strictures for modifying a rule it no longer finds genial—no one is left to represent the States' interests in defending the Rule.

Counsel for Texas contacted counsel for all parties regarding this motion. Counsel for Plaintiffs indicated that they opposed this motion. Counsel for the federal governmental agents and agencies likewise indicated that they opposed this motion.

## Background

This immigration case concerns the hotly contested Public Charge Rule. Under the INA, "any alien who . . . in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A).

In 2019, following extensive notice and comment, the Department of Homeland Security issued a final rule adopting new definition of "public charge" for purposes of this statute. *See Casa de Maryland, Inc. v. Trump*, 971 F.3d 220, 234, *reh'g granted*, 981 F.3d 311, 314 (4th Cir. 2020) (dismissed March 11, 2021). The new rule defines "public charge" as "'an alien who receives one or more public benefits . . . for more than 12 months in the aggregate within any 36-month period.'" *Id.* at 234 (quoting

Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019)). The Rule further explains that "public benefits" include non-cash benefits that are funded in part by the States, including certain Medicaid benefits. *Id.*

This case is one of several related challenges to the Rule. Plaintiffs are a County and the Illinois Coalition for Immigrant Refugee Rights, a non-profit organization providing benefits for aliens. They brought this action challenging the Rule under the Administrative Procedure Act and sought a preliminary injunction. *Cook County v. McAleenan*, 417 F. Supp. 3d 1008, 1013-14 (N.D. Ill. 2019). Purporting to apply *Gegiow v. Uhl*, 239 U.S. 3 (1915), the district court concluded that the term "'public charge' encompasses only persons who—like 'idiots' or persons with 'a mental or physical defect of a nature to affect their ability to make a living'—would be substantially, if not entirely, dependent on government assistance on a long-term basis." *Id.* at 1023. Because the Rule extends beyond that narrow definition to cover individuals who depend on supplemental, often non-cash benefits, the district court held the rule invalid. Thus, the district court issued a preliminary injunction blocking the United States from enforcing the rule across the State of Illinois. *Id.* at 1030.

The United States immediately appealed and moved to stay the preliminary injunction. This Court denied the stay, but the Supreme Court ultimately granted one. *Cook County v. Wolf*, 962 F.3d 208, 217 (7th Cir. 2020); *Wolf v. Cook County*, 140 S. Ct. 681 (2020).

This Court then considered the United States's appeal. A divided panel affirmed the district court's preliminary injunction. *Cook County*, 962 F.3d at 234. The Supreme Court's stay remained in place, and the United States filed a petition for a

writ of certiorari. *Mayorkas v. Cook County*, No. 20-450. That petition remained pending while the Supreme Court granted certiorari in another case about the validity of DHS's Rule. *See Dep't of Homeland Sec. v. New York*, No. 20-449, 2021 WL 666376 (U.S. Feb. 22, 2021).

Meanwhile, litigation in this case continued in the district court. The Plaintiffs moved for partial summary judgment on their APA claims. *See* Memorandum Opinion & Order at 2, *Cook County v. Wolf*, No. 1:19-cv-06334 (N.D. Ill. Nov. 2, 2020) (ECF No. 222). The district court granted the motion, vacated the Rule, and entered a partial final judgment under Rule 54(b). *Id.* at 14. Unlike the district court's preliminary injunction, the vacatur was explicitly "not limited to the State of Illinois." *Id.* at 8. In other words, the district court's ruling applied nationwide. The United States appealed that ruling to this Court and have been litigating that appeal for over three months.

Following the change in Administration, the United States decided not to defend the Rule. On March 9, 2021, the United States filed nearly simultaneous motions to dismiss all cases challenging the Rule. *See, e.g.*, Unopposed Motion to Dismiss Appeal at 1, *Cook County v. Wolf*, No. 20-3150 (ECF No. 23). This Court granted that motion. Order, *Cook County v. Wolf*, No. 20-3150 (ECF No. 24-1). It also issued its mandate immediately and without allowing any potentially interested parties to seek leave to intervene and defend the rule. Notice of Issuance of Mandate at 2, *Cook County v. Wolf*, No. 20-3150 (ECF No. 24-2). As a result, the public charge rule will become (absent intervention and a stay) unenforceable in any State—including the State-Intervenors.

Because the United States will no longer defend a rule directly implicating the States' interests, these States now move this Court to withdraw its mandate, and to reconsider its dismissal, and for leave to intervene in defense of the Rule.

## Argument

Although the Federal Rules of Civil Procedure do not apply directly in appellate proceedings, multiple courts (including this one) have recognized that the rules controlling district court intervention may serve as useful guidance regarding whether to permit intervention in other contexts. *E.g.*, *Int'l Union v. Scofield*, 382 U.S. 205, 217 n.10 (1965); *Sierra Club, Inc. v. E.P.A.*, 358 F.3d 516, 517-18 (7th Cir. 2004); *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). The States meet Rule 24's standards for intervention both as of right and as a permissive matter.

### I. The States are entitled to intervene as of right.

To intervene as of right under Rule 24(a), an intervenor must show: "(1) [a] timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (internal quotation marks omitted). The States easily meet that standard.

First, this motion is timely. "We look to four factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay;

(3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Id.* (internal quotation marks omitted).

Although the States have been aware of their interests in the Rule for some time, this case clearly presents "unusual circumstances" warranting intervention. The previous Administration and former federal defendants in this case defended the Rule for years across multiple courts, and the States' interests were appropriately represented in this defense. The States therefore relied on the United States to defend the Rule in lieu of burdening the courts with additional briefing reiterating that defense. It was not until two days ago, on March 9, when the United States voluntarily moved to dismiss this case that the States learned that the new Administration intended to withdraw its defense of the Rule in courts across the country and, in essence, repeal the Rule by stipulation in litigation. On learning of that decision, the States immediately moved to intervene.

Further, the Plaintiffs will not be prejudiced by the States' intervention. Plaintiffs faced the possibility of protracted litigation until two days ago; they suffer no prejudice by litigating the same issues in the same forum against the States rather than the United States. In contrast, the States will suffer great prejudice if they cannot intervene. As discussed in detail below, this is so because the States spend billions of dollars on Medicaid services and other public benefits to indigent individuals, including individuals who would be inadmissible under the Rule. These costs have steadily increased over the past several years, and the Rule would have helped to reduce such expenditures by efficiently and effectively implementing Congress's long-held policy of limiting the immigration of individuals who are not self-sufficient.

Thus, if the States cannot defend the Rule against the district court's nationwide vacatur, their Medicaid and other social-welfare expenditures will be higher than they would if the Rule were enforced. This motion is therefore timely.

Second, the States have important interests relating to the subject matter of this action, specifically their interests in conserving their Medicaid and related social-welfare budgets. Providing for the healthcare needs of economically disadvantaged individuals represents a substantial portion of the States' budgets. For example, in Texas in 2015, approximately 4 million Texans relied on Medicaid. Tex. Health & Human Servs. Comm'n, Texas Medicaid and Chip in Perspective 1-2 (11th ed. 2017), https://hhs.texas.gov/reports/2017/02/texas-medicaid-chip-perspective-eleventh-edition. Medicaid is jointly financed by the federal government and the States. *Id.* at 4. In 2015, total Texas expenditures for Medicaid represented approximately 28% of the State's budget. *Id.* at 4. In the past several years, the federal government has paid for approximately 56-58% of Texas's Medicaid expenditures. *Id.* at 183. Although the exact amount of Texas's Medicaid budget spent on immigrants who would otherwise be inadmissible under the DHS Rule has varied, the total budget is always measured in billions of dollars. *Id.* at 179. And from 2000 to 2015, Medicaid expenses increased from 20% to 28% of the state's budget. *Id.* at 179.

This Court can and should infer that invalidating the Rule will have a disproportionate impact on the States, particularly on border States. For example, Texas and Montana have among the largest international borders in the Union and provide Medicaid services to many immigrants. The Rule would reduce that burden. Under the relevant statute, "[a]ny alien who . . . in the opinion of the Attorney General at

the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A). DHS's rule defines "public charge" as "'an alien who receives one or more public benefits . . . for more than 12 months in the aggregate within any 36-month period.'" 84 Fed. Reg. at 41,501. "Public benefits" specifically includes, among other forms of public assistance, Medicaid services with some exceptions. *Id.* Thus, if the Attorney General determined that an alien applying for admission to the United States would likely require Medicaid services for more than 12 months in a 36-month period, then that alien would be inadmissible. Accordingly, fewer aliens requiring Medicaid and other public services would be admitted to the United States, including into Texas and Montana, thus reducing the States' Medicaid budgets. Accordingly, each State Intervenor has a state interest in the subject matter of this action.

Third, the States' interests in conserving their increasing Medicaid and related social-welfare budgets will be impaired by the disposition of this case absent intervention. As explained above, the district court's vacatur order was explicitly "not limited to the State of Illinois." *See* Memorandum Opinion & Order at 8, *supra* (ECF 222). In other words, though this case has been litigated by one county and one interest group, the district court's ruling applies nationwide. Now that the United States has voluntarily dismissed this appeal, nothing will stop the district court's nationwide vacatur from taking effect and adversely impacting the States' budgets, including their Medicaid expenditures.

Fourth, no party now adequately represents the States' interests because no party is left to defend the Rule. Absent the States' intervention, all States will be

affected by the invalidation of the Rule without Texas and other similarly situated States having the ability to defend those interests. For these reasons, the States are entitled to intervene as of right.

## II. The States also meet the criteria for permissive intervention.

For similar reasons, even if the Court concludes that the States do not meet the standard to intervene as of right, it should use its discretion to allow the States to do so. Under Rule 24(b), a movant seeking permissive intervention must show: (1) that there exists an independent ground of subject matter jurisdiction; (2) that the motion is timely; (3) that the movant's claims or defenses share with the main action a common question of law or fact; and (4) that intervention will not result in undue delay or prejudice to the existing parties. Fed R. Civ. P. 24(b)(1), 24(b)(1)(B), 24(b)(2), 24(b)(3); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Again, the States easily meet that standard.

Here, the requirements of an independent ground of subject-matter jurisdiction and shared claims or defenses are not strictly applicable, as plaintiffs must demonstrate subject-matter jurisdiction, and the States seek to intervene as defendants by stepping into the shoes of the United States. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). But this Court would retain subject-matter jurisdiction over this federal question, and the States intend to present similar defenses of the Rule to those that were (until two days ago) presented by the federal government. *Cook County*, 962 F.3d at 217. The States likewise enjoy an actual controversy against the plaintiffs: they will be tangibly, economically affected by an adverse judgment redressable by this Court, and thus this Court would retain Article III jurisdiction.

The timeliness and prejudice analyses discussed above apply equally to the States' ability to intervene permissively. The States filed this motion promptly after they learned on March 9 that the United States would no longer defend the Rule, and Plaintiffs will suffer no prejudice by this intervention because they were already expected to continue to litigate this case until mere days ago.

This Court should exercise its discretion to permit the States to intervene to defend their interests in avoiding increased costs by the invalidation of the Rule that will otherwise go unprotected. The States have enormous financial obligations in providing Medicaid and other public services and, until quite recently, had no need to intervene to defend those interests. That need has changed due to unexpected litigation tactics by the United States. This Court should not countenance this unprecedented turn.

*[Remainder of case intentionally left back.]*

## Conclusion

This Court should grant the States leave to intervene as Defendant-Appellants.

Respectfully submitted.

STEVE MARSHALL
Attorney General of Alabama

MARK BRNOVICH
Attorney General of Arizona

LESLIE RUTLEDGE
Attorney General of Arkansas

TODD ROKITA
Attorney General of Indiana

DEREK SCHMIDT
Attorney General of Kansas

DANIEL CAMERON
Attorney General of Kentucky

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

AUSTIN KNUDSEN
Attorney General of Montana

DAVE YOST
Attorney General of Ohio

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

/s/ Judd E. Stone II
JUDD E. STONE II
Solicitor General
Judd.Stone@oag.texas.gov

LANORA C. PETTIT
Assistant Solicitor General

BENJAMIN WALLACE MENDELSON
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for State Intervenors

MIKE HUNTER
Attorney General of Oklahoma

ALAN WILSON
Attorney General of
South Carolina

PATRICK MORRISEY
Attorney General of
West Virginia

## CERTIFICATE OF CONFERENCE

On March 11, 2021, counsel for the State of Texas conferred with counsel for plaintiffs and for the United States, who advised that they are opposed to this motion.

/s/ Judd E. Stone II
JUDD E. STONE II

## CERTIFICATE OF SERVICE

On March 11, 2021, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with local rules; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Judd E. Stone II
JUDD E. STONE II

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 2,527 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Judd E. Stone II
Judd E. Stone II